E-FILED
Tuesday, 24 November, 2026 03:16:08 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| KRAIG PAYNE,<br>Plaintiff,<br><br>v.<br><br>NATHAN GOSSAGE and<br>ANDREW HILL,<br>Defendants. | Case No. 24-CV-3215 |

## Opinion & Order

Plaintiff, Kraig Payne, is proceeding *pro se* and is currently incarcerated at Lawrence Correctional Center. He brought this suit pursuant to 42 U.S.C. § 1983, alleging in his Amended Complaint (D. #23) that Defendants Nathan Gossage and Andrew Hill failed to protect him from an attack by another inmate, in violation of his rights under the Eighth Amendment. Now before the Court is Defendants' Motion for Summary Judgment (D. #80).[1] Plaintiff has filed four Responses (D. #86, #87, #88, #94), and Defendants have filed a Reply (D. #92). For the reasons discussed below, Defendants' Motion for Summary Judgment is GRANTED.

### I

### A

As an initial matter, the Local Rules governing summary judgment contemplate only a single response. C.D. IL. L.R. 7.1(D)(2). More importantly, those Rules establish that the failure to respond to any numbered fact within the movant's statement of undisputed material facts "will be deemed an admission of the fact." *Id.* at 7.1(D)(2)(b)(6). Nowhere in Plaintiff's four Responses has he offered any specific response

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

to Defendants' facts. Accordingly, pursuant to the Local Rules, Defendants' undisputed material facts are deemed admitted.

Furthermore, Plaintiff has not presented anything resembling an additional material facts section. See *id.* at 7.1(D)(2)(b)(5) (directing nonmovant to: "List and number each additional material fact raised in opposition to the motion for summary judgment. Each additional fact must be supported by evidentiary documentation referenced by specific page. Include as exhibits all relevant documentary evidence not already submitted by the movant"). "While [courts] liberally construe the pleadings of individuals who proceed pro se, 'neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes.'" *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (quoting *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001)).The instant Motion will therefore be decided based on Defendants' undisputed material facts alone.

Still, summary judgment for Defendants is not automatic. The ultimate burden remains with the movant to show that the undisputed material facts entitle them to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

**B**

Defendant Hill was a Correctional Sergeant at Western Illinois Correctional Center ("Western") assigned as the restrictive housing sergeant in January 2024. UMF #2.[2] Defendant Gossage was a Correctional Officer at Western assigned as the wing officer on the receiving side of the restrictive housing unit ("RHU") in January 2024. UMF #3.

From January 9 to January 29, 2024, Plaintiff resided in Cell 18 of the RHU at Western. UMF #13. On January 27, while Plaintiff was taking a shower, he got into an argument with the RHU porter concerning "some extra trays." Other individuals in custody heard Plaintiff's argument with the porter and those

[2] Citations to Defendants' undisputed material facts, located at pages 3 through 10 of their Motion for Summary Judgment, will be abbreviated as "UMF # ___."

individuals yelled at Plaintiff and called him names. UMF #17.

Plaintiff testified that when he was walking back to his cell from the shower on January 27, he continued to argue with a different individual in custody, Arkee Woodson. UMF #18; D. 80-1 at ECF p. 22. This was the individual that Plaintiff would fight on January 30. UMF #18. When Plaintiff was asked at his deposition who was escorting him from the shower on January 27, he initially testified that it was Gossage; then he testified that it was Hill; then he testified that "it was one of them." UMF #23; D. 80-1 at ECF p. 22-23. Finally, Plaintiff testified that it had been Gossage escorting him. UMF #23; D. 80-1 at ECF p. 23.

Plaintiff explained at his deposition that he is suing IDOC Director LaToya Hughes in a different case, so she or her family directed Woodson to start a fight with him, because Woodson is Hughes' son. UMF # 25. Plaintiff also testified that he was receiving threats from correctional officers "telepathically" every night while he slept, through "technology that's beyond your belief." UMF #26; D. 80-1 at ECF p. 10-11, 13.

Plaintiff was transferred out of the RHU and into Housing Unit 1, A-wing, cell 57 on January 29, 2024. UMF # 28.

On January 30, 2024, Plaintiff was involved in a fight with Woodson in Housing Unit 1 A-wing. UMF #29. At 6:40 p.m., Correctional Officer Bradley Smith observed Plaintiff and Woodson, "throwing closed hand fists at one another" in front of Plaintiff's cell. UMF #30. Officer Andrew Dixon, assigned to the Housing Unit 1 Control post, witnessed Plaintiff and Woodson exchange punches and proceeded to call a "10-10 R1 A Wing" code over institutional radio. UMF #31. Correctional Sergeant Brian Klingele responded to the 10-10, observed Plaintiff "exchanging closed fist punches" with Woodson, and gave both individuals a direct order to stop fighting. UMF #32. Woodson backed away and the fight ended. UMF #36; D. 80-7 at ECF p. 5.

According to incident reports, the fight commenced as Woodson was attempting to move into cell 57, his newly assigned cell where Plaintiff already resided. UMF #33. Plaintiff

started fighting Woodson as soon as he showed up to move into the cell and threw the first punch at Woodson. UMF #34. In a later-filed grievance, Plaintiff stated that the fight started as soon as his cell door was opened because Plaintiff was not going to let Woodson come into the cell. UMF #47. Plaintiff estimated that the fight lasted two or three seconds. UMF #35.

After the fight, Plaintiff was taken to the Health Care Unit and treated by Nurse Regine Claude for a "laceration to his chin and lip"; Nurse Claude charted that there were no other signs of distress or other apparent injuries. UMF #40. Plaintiff testified that the lip laceration was the only physical injury he suffered. UMF #45. Plaintiff was sent to Sarah D. Culbertson Memorial Hospital at 7:00 p.m. for further evaluation of the lacerations on his chin and lip and returned later that evening. UMF #41. On February 2, 2024, Plaintiff refused medical services and his appointment for follow-up care.

On February 5, 2024, Plaintiff had a hearing before the Adjustment Committee for the January 30 altercation and pled guilty to fighting in violation of Offense No. 214. UMF # 43. The Adjustment Committee issued Plaintiff seven days of segregation and directed the implementation of a "Keep Separate From order" on Plaintiff and Woodson. UMF #44.

Plaintiff conceded at his deposition that he does not know who assigned Woodson to his cell. UMF #51. At the time of Plaintiff's fight with Woodson, Gossage was assigned to the RHU and Hill was assigned to the segregation unit. UMF #53; UMF #54. Plaintiff admits that Defendants were not working in his Housing Unit when he got into the altercation with Woodson. UMF #49.

Prior to the incident with Woodson, Plaintiff had never spoken or otherwise communicated with either Gossage or Hill. UMF #57; UMF #58. Plaintiff never informed any correctional officers that Woodson posed a threat to Plaintiff's safety at any time prior to the January 30, 2024, altercation. UMF #59. Plaintiff believes Defendants are liable because they did not issue Plaintiff and inmate Woodson disciplinary tickets "for being verbal and disrespectful on the gallery, threatening each

other." UMF #63.

## II

### A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009) (citations omitted).

When ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing inferences that are only supported by speculation or conjecture. *See Singer*, 593 F.3d at 533.

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007) (citing *Celotex Corp.*, 477 U.S. at 322-323)). Thus, summary judgment is appropriate only where the evidence is such that no reasonable jury could return a verdict in the nonmovant's favor. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

### B

Prison officials violate the Eighth Amendment when they act with deliberate indifference to "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, correctional officials are required "to protect inmates from certain dangers posed by other inmates." *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023).

A claim that a prison official was deliberately indifferent to a risk of harm posed by another inmate has both an objective and a subjective component. *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837). "First, the harm to which the prisoner was exposed must be an objectively serious one." *Id.*; *see also Farmer*, 511 U.S. at 834 ("It is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."). To satisfy the objective component of a failure to protect claim, a plaintiff must present evidence showing "not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that that serious harm might actually occur." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). A "substantial risk" is one that is so great that it is "almost certain to materialize if nothing is done." *Id.* at 911; *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (stating that an inmate must establish that he was "in serious peril of being harmed" and that "there must be a strong likelihood rather than a mere possibility that violence will occur").

Second, under the subjective prong, the "official must have actual, and not merely constructive, knowledge of the risk in order to be held liable; specifically, he 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'" *Gevas*, 798 F.3d at 480 (quoting *Farmer*, 511 U.S. at 837).

Accordingly, the Seventh Circuit has found that a failure to protect claim

> under the Eighth Amendment requires the following three elements: (1) there must be a risk of harm to the plaintiff that is so objectively serious as to be "excessive" (and that risk must in fact materialize); (2) the defendant must "know" of the risk (put differently, he must possess subjective awareness that the risk exists); and (3) the defendant's response to the risk must be so inadequate as to constitute "disregard" of (or deliberate indifference toward) the risk. In addition, a fourth element exists: (4) the plaintiff must prove that the defendant's deliberate indifference actually caused his injury.

*Hunter*, 73 F.4th at 565 (citations omitted).

**C**

On the evidence before the Court, no reasonable jury could find Defendants constitutionally liable for failing to protect Plaintiff. More specifically, no reasonable jury could conclude that there existed a substantial risk that serious harm would occur or that Defendants were aware of such a risk.

The evidence shows that on January 27, 2024, Plaintiff got into an argument with an inmate working as a porter. This caused other inmates to yell at Plaintiff and call him names. As Plaintiff walked back to his cell, he continued to argue with Woodson.

That Plaintiff argued with Woodson (among others), absent *any* further details about their interaction, does not establish that Woodson presented a substantial risk of serious harm to Plaintiff. "Arguments between inmates in a prison environment are not uncommon[.]" *Talley v. Gloede*, 189 F.4th 626, 628 (7th Cir. 2026). In *Talley*, the Seventh Circuit noted that "the only indication" conveyed to the defendant correctional officer "that the argument could escalate beyond a verbal confrontation was that lone early attempt by Wheeler to

take a swing at Talley." *Id.* The court concluded that those circumstances "would not have alerted a reasonable officer that allowing Wheeler and Talley to walk back to their cells would present a high degree of risk to Talley of serious harm because there was sparse evidence of a threat of any imminent physical altercation." *Id.*

If a single attempt to "take a swing" at the plaintiff in *Talley* was insufficient to demonstrate a substantial risk of serious harm, it follows that the argument in this case—an argument alone—falls well short. *See also Moore v. W. Illinois Corr. Ctr.*, 89 F.4th 582, 593 (7th Cir. 2023) (concluding that "an argument over horseplay that involved no threats of physical violence . . . is not sufficient to put the officer on notice of a substantial risk of serious harm"). Simply put, a reasonable jury cannot find that a prison inmate is in "serious peril of being harmed," or that there is a "strong likelihood" of violence, merely because that inmate argued with a fellow inmate. *See Pinkston*, 440 F.3d at 889.

For essentially the same reasons, Plaintiff has failed to make the requisite showing with respect to the subjective prong as well. Even assuming that Defendants were both present when Plaintiff argued with Woodson, that argument would not have put them on notice that action was required to avoid a substantial risk of serious harm. *See Moore*, 89 F.4th at 593.

Defendants contend that there are additional aspects in which Plaintiff's claim must fail. They argue that lacerations to Plaintiff's lip and chin following a two- to three-second fight, for which Plaintiff declined any follow-up treatment, do not, as a matter of law, satisfy the objectively serious harm requirement. *See Murrell v. Bukowski*, 2011 WL 884736, at *16 (C.D. Ill. Mar. 11, 2011) ("Not every injury suffered by one prisoner at the hands of another translates into constitutional liability for the prison officials responsible for the victim's safety. Rather, only serious harms are protected. Plaintiff was never seriously harmed by inmate Eggleston. The only injury he sustained from the fight was a 'busted lip' for which he never

sought medical attention. Thus, Plaintiff's safety was ever seriously compromised." (citations omitted)). They also argue that because Plaintiff instigated the physical altercation with Woodson, he cannot prove causation. *See Hunter*, 73 F.4th at 569 (Hunter's deliberate choice to approach Patterson was an unforeseeable superseding cause of his injury that severs Mueske's liability.").

However, because Plaintiff has failed to put forth evidence that would allow a reasonable jury to find that there existed a substantial risk that serious harm would occur or that Defendants were aware of such a risk, the Court need not reach these additional arguments.

**III**

For the reasons set forth above, Defendants' Motion for Summary Judgment (D. #80) is GRANTED. Judgment to enter for Defendants and against Plaintiff.

*It is so ordered.*

Entered on November 24, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE